## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**Kyle Koch,**

*Plaintiff*,

v.

**Lake City Credit, LLC, and**
**Gary S. Williky,**

*Defendants*.

Case No: _____

Ad Damnum: **$2,000 + Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Kyle Koch** ("**Mr. Koch**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Lake City Credit, LLC** ("**Lake City Credit**") and Gary S. Williky ("**Williky**") (collectivley "the **Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Koch, an individual consumer, against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. §1692, *et. seq.* ("**FDCPA**") and the *Florida Consumer Collection Practices Act*, Section 559.55, *et seq.*, Florida Statutes ("**FCCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FDCPA claims arises under the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction for Mr. Koch's state law claims pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to the provisions of the FDCPA and the FCCPA and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

5.      Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Koch

6.      **Mr. Koch** is a natural person residing in Brevard County, Florida and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

### Lake City Credit

7.      **Lake City Credit** is a Delaware limited liability company with a primary business address of 2000 South Stemmons Freeway, Suite 102, Lake Dallas, TX 75065.

8.      Lake City Credit is registered to conduct business in the state of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

### Williky

9.      **Williky** is a natural person, aged approximately 59.

10.     Williky is the sole managing member of Lake City Credit and the person responsible for determining its collection policies.

11.     On information and belief, Williky resides at **639 Martingale Dr., Little Elm, TX 75068** and can be served at that address.

## **Williky's History of Fruad**

12.     In 2015, the Securities and Exchange Commission ("**SEC**") filed a lawsuit against Williky, alleging that he engaged in various illegal financial acts, including insider trading, market manipulation, email scalping.

13.     The SEC alleged that Williky used multiple brokerage accounts, including three in his wife's name, to buy and sell a large number of shares of a Imperial Petroleum, LLC, a small, publicly-traded company.

14.     Using what are commonly known as "wash sales" and "match trades," where shares of a company are "sold" without actual change of beneficial ownership, Williky created an appearance of high liquidity of the shares of Imperial Petroleum, LLC.

15.     Williky also fabricated and spread false information about Imperial Petroleum, LLC to raise its share price, including falsely claiming that Imperial Petroleum, LLC *produced* biodiesel fuel, when it was only a reseller.

16.     On or around August 3, 2018, the SEC and Mr. Williky entered into a bifurcated settlement agreement whereby Mr. Williky was precluded from arguing that he did not violate the federal securities laws and the allegations in the SEC's complaint were to be deemed true. **SEE PLAINTIFF'S EXHIBIT A.**

17.     Pursuant to the settlement agreement, the court was to determine the financial penalties. *Id.*

18.     On August 3, 2018, after a review of the relevant factual allegations, the court entered a judgment of **$2,784,245.10** against Mr. Williky, which amount included civil penalties for insider trading, scalping emails, and disgorgement of illegally-obtained

profit. Williky was also permanently banned by the SEC from running any publicly-traded company. *Id.*

19.    Less than a week later, Williky registered Lake City Credit with the Florida Secretary of State as a new corporation and began collecting consumer debts.

20.    Before this, but after the filing of the SEC's 2015 lawsuit against him, Williky worked for DeVille Asset Management, L.P., ("**DeVille**"), a debt collector.

21.    Williky was listed as DeVille's director of recovery, which, on information and belief, is a managerial position.

22.    On September 13, 2018 the SEC filed a complaint in the United States District Court for the District of Maryland against the owners of DeVille, Kevin B. Merrill, Jay B. Ledford, and Cameron R. Jezierski, for Securities Fraud, case#: 1:18-cv-02844-RDB.

23.    On September 18, 2018, a criminal indictment was unsealed in Baltimore, Maryland, charging Merrill, Ledford and Jezierski with conspiracy, wire fraud, identity theft, and money laundering.

## The Defendants are Debt Collectors

24.    The Defendants are "debt collectors" within the meaning of 15 U.S.C. §1692a(6) and Section 559.55(7), Florida Statutes in that they use postal mail or other instrumentality of commerce, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts. Alternatively, Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

25.     Despite collecting consumer debts in the state of Florida, Lake City Credit never obtained a license as a Consumer Collection Agency by the Florida Office of Financial Regulation.

## FACTUAL ALLEGATIONS

### The Alleged Debt

26.     On or about January 18, 2008, Mr. Koch opened a MasterCard account with Continental Finance ("**Continental**").

27.     Around 2010, Continental charged off $652 as uncollectable (the "**Debt**").

28.     The Debt arose from charges which were for family, personal, or household purposes, specifically consumer goods and services charged to a consumer credit card, and meets the definitions of "debt" under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

29.     Around 2012, the Debt was sold to Consumer Recovery Associates ("**Consumer Recovery**"), a Virginia Beach based debt collector and debt buyer.

### Discharge of the Debt in Chapter 7 Bankruptcy

30.     In March 2012, Mr. Koch filed for relief under Chapter 7 of the United States Bankruptcy Code in the United States District Court for the Middle District of Florida, case number 6:12-bk-02773-ABB.

31.     Mr. Koch was granted a discharge of his debts on June 7, 2012.

32.     The Debt was included in Mr. Koch's bankruptcy under a truncated account number, ending in 6926, and was thus discharged. **SEE PLAINTIFF'S EXHIBIT B.**

**Defendants' Collection Letter to Plaintiff**

33.     On March 25, 2019, Lake City Credit mailed a collection letter (the "**Letter**") from its offices in Texas to Mr. Koch at his home address in Florida. **SEE PLAINTIFF'S EXHIBIT C.**

34.     The Letter was the initial communication between the Defendants and Mr. Koch.

35.     The Letter was headlined "DEBT RESOLUTION OFFER 2019 TAX SEASON." *Id.*

36.     The Letter was an attempt to collect the Debt, as evidenced by the inclusion of a 16-digit account number ending in – 6926. *Id.*

37.      The Letter stated "this is an attempt to collect a debt. Any information will be used for this purpose."

38.     The Letter did not disclose that the communication was from a debt collector. *Id.*

39.     The letter did not contain any statement that: (a) unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (b) if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt

or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and, (c) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

40.     Defendants never mailed any other communication to Mr. Koch with this statement.

### Defendants' Impermissible Addition of Interest

41.     The Defendants' Letter attempted to collect a total balance of $1,830.23. **SEE PLAINTIFF'S EXHIBIT C.**

42.     According to the Letter, the $1,830.23 included $1,187.78 of added interest.

43.     At the time the Letter was mailed to Mr. Koch, *nothing* was owed regarding the Debt, as it had been discharged in bankruptcy.

44.     However, even assuming *arguendo*, that the Debt remained owed, the Defendant's had no legal ability to add $1,187.78 in interest, as post-charge off interest had been waived.

45.     Regulation Z of the *Truth In Lending Act* ("**TILA**"), 12 C.F.R. 226.5(b)(2), requires a credit card company to prepare and mail a monthly periodic statement if more than $1 of interest is being assessed on a credit card account.

46.     Mr. Koch has not received monthly statements post-charge off of the account.

47. Thus, on information and belief, Continental discontinued the addition of interest upon charge off, as the account was deemed a likely loss and Continental deemed it economically prudent to discontinue the assessment of interest rather than incur the expenses of complying with TILA.

48. Once Continental stopped assessing interest, it waived its right to collect "agreed-to interest;" this waiver included both statutory and contract-based interest.

49. Lake City Credit, as successor-in-interest of the Debt to Continental, is precluded from collecting post charge-off interest on a debt where the original creditor had waived its right to collect this amount. See *Tabiti v. LVNV Funding, LLC, et al*., No. 13-cv-7198 (N.D. Ill. Mar. 27, 2019).

50. Further, no interest can accrue on a debt which was discharged in bankruptcy.

51. Despite being well aware that they could not legally add interest to the Debt, the Defendants added more than $1,100 of interest. Defendants then offered to "settle" the Debt for "only" $915.12 – a purportedly "discounted amount" which, in reality, was nearly 50% more than the charged-off balance of the Debt.

52. On information and belief, Defendants' inclusion of unauthorized interest and offer to "settle" the account at a "discount" is an intentional strategy employed by Defendants to deceive consumers into believing that they are paying less than the full balance of the Debt, when in actuality they are paying more than is legally permissible – even had the Debt not been discharged in bankruptcy.

**Defendants' False Claim that Debt Was Being Reported to Credit Bureaus**

53.     Defendants' Letter stated "once cleared funds are received you may request that we report to all three credit bureaus for deletion (SIC) if qualified. Please note this offer will expire on April 15, 2019." *Id.*

54.     Defendants' "offer" of a report of deletion to all three credit bureaus implies that the Debt was, at the time of the Letter, being reported to all three credit bureaus, as something cannot be "deleted" if it is not there to begin with.

55.     Thus, the Defendants' statement would cause an unsophisticated consumer to believe that the Defendants were actively reporting the Debt to the three nationwide *Consumer Credit Reporting Agencies* ("**CRAs**").

56.     The *Fair Credit Reporting Act* ("**FCRA**") restricts the period for which a collection account can be reported to a CRA to seven years. 15 U.S.C. §1681c(a)(4).

57.     Thus, even if the Debt had not been discharged in bankruptcy, the Debt could not appear on any report, since the running of the reporting period prescribed by the FCRA would have expired in 2017.

58.     Additionally, the three major nationwide CRAs, Equifax, Experian and Trans Union, require prospective furnishers of data to meet certain criteria, including that their owners be reputable.

59.     The Defendants therefore could not report the Debt to "all three credit bureaus," as the CRAs would reject any data from a company owned by Williky, due to the lifetime ban preventing him from owning a publicly-traded company and the civil judgment entered against him for insider trading and other financial frauds.

60.    Because the Defendants could not legally report the Debt to the CRAs, the Defendants could not request deletion of anything from Mr. Koch's credit report.

## Williky's Familiarity with the FCRA

61.    Williky is intimately familiar with the FCRA, as evidenced by his prior filing of a well-pled, *pro se* lawsuit, as the plaintiff, against a payday loan company, Tiger Financial Management, LLC, claiming said lender failed to comply with the FCRA. *See Gary S. Williky v. d/b/a Speedy Cash*, Case 4:14-cv-00696-Y, D. TX, 2014.

62.    Additionally, Williky and his wife operated a "credit repair" company called CreditMend247, a now-defunct enterprise which purported that it could utilize consumer protection afforded by the FCRA to help "fix" the damaged credit reports of consumers, for a fee.

63.    Williky also starred in videos posted on YouTube in which he pitched credit repair services.

64.    Mr. Koch became concerned that the Defendants would report the purported Debt to the CRAs when he received the letter on April 1, 2019.

65.    Mr. Koch called the Defendants at their office in Texas and, from the Texas office, a Lake City Credit agent then attempted to collect the Debt from Mr. Koch.

66.    At no point did the agent state that, due to the age of the debt and/or because the debt was discharged in bankruptcy, Mr. Koch could not be sued for the debt, nor did he disclose that due to the age of the debt, it could not be reported to any CRA.

## Defendants Failed To Provide Notice of Assignment of Debt

67.     Pursuant to Section 559.715, Fla. Stat., the Defendants were required to send written notice to Mr. Koch that it had purchased the debt, and to wait at least 30 days before taking any action to collect the debt.

68.     The Defendants never sent Mr. Koch written notification of assignment of the Debt.

69.     Despite this, the Defendants attempted to collect the Debt from Mr. Koch, by mailing a letter from their Texas office to Mr. Koch in Florida.

70.     Defendants also called Mr. Koch in an attempt to collect the Debt.

## Defendants Collected Debt without a Florida License

71.     Pursuant to the FCCPA, a debt collector is prohibited from attempting to collect consumer debts in the state of Florida without first registering as a Consumer Collection Agency ("CCA") and obtaining a CCA license. *See* Section 559.553, Florida Statutes.

72.     Despite this legal requirement, the Defendants attempted to collect a consumer debt from Mr. Koch without such license.

73.     The Defendants' letter to, and phone call with, Mr. Koch are "communications" pursuant to 15 U.S.C. § 1692a(2).

74.     Lake City Credit's conduct as described herein was done pursuant to policies set by Williky, who is jointly and severally liable.

75.    Mr. Koch has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees and/or has assigned his right to collect fees to the firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

76.    Mr. Koch adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

77.    The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** when they made false and misleading representation in an attempt to collect a debt by:

(a)    Attempting to collect the Debt despite it having been discharged in Chapter 7 Bankruptcy;

(b)    Attempting to collect more than $1,187.78 of interest accrued on a Debt no longer subject to the accumulation of interest, as it had been discharged in bankruptcy and the original creditor waived the right to charge interest post-charge-off, regardless of bankruptcy;

(c)    Offering a "discounted" settlement offer which was, in reality, more than the actual amount of the Debt, had it been a collectable debt;

(d)    Falsely claiming that the Debt was being reported to the CRAs, when the Debt was far past the running of the reporting period prescribed by the FCRA;

(e)    Falsely claiming the Defendants could cause information to be deleted by the CRAs and thus no longer report to Mr. Koch's credit history, when in

reality, the Defendants were not furnishers of data to the CRAs and thus could not report anything to or delete anything from them; and,

(f)      Attempting to collect a debt for which Lake City Credit was the assignee without first providing written notice of assignment of debt, as required by Florida Statute.

78.      The Defendants violated **15 U.S.C. § 1692e(2)(a)** when they misrepresented the character, amount and legal status of a debt by:

(a)      falsely representing that the Debt remained owed when it had been discharged in Chapter 7 Bankruptcy in 2012;

(b)      false representing that it continued to accrue interest when it attempted to collect more than $1,187.78 of interest on a Debt no longer subject to the accumulation of interest, as it had been discharged in bankruptcy and the original creditor waived the right to charge interest post-charge off regardless of bankruptcy; and,

(c)      Falsely claiming that the Debt was being reported to the CRAs, when the Debt was far past the reporting period.

79.      The Defendants violated **15 U.S.C. § 1692e(5)** in that they threatened action which cannot legally be taken, specifically (1) the collection of a debt properly discharged in bankruptcy seven years prior; and, (2) reporting a debt to the CRAs, when the reporting period had expired.

80.      The Defendants violated **15 U.S.C. § 1692e(8)** in that they communicated credit information which was known to be, or should have been known to be false.

Specifically, the Defendants claimed that the Debt was being reported to the CRAs, when it was not, and legally could not be, and that Defendants could cause deletion of the Debt from Mr. Koch's credit if paid, when they could not, since (1) such a tradeline had not been reported to the CRAs, and (2) the Defendants were not furnishers of data to any CRA.

81.     The Defendants violated **15 U.S.C. § 1692e(11)** when they failed to disclose that the Letter was a communication from a debt collector.

82.     The Defendants violated **15 U.S.C. § 1692f** in that they used unfair and unconscionable means to collect a debt, by:

(a)     attempting to collect a debt before mailing written notice of assignment of debt and waiting 30 days before taking any collection action, as required by Florida law;

(b)     attempting to collect a debt discharged in bankruptcy;

(c)     attempting to collect interest without any legal basis to do so;

(d)     offering to settle at a "discounted" rate which was, in reality, nearly 50% more than the total amount of the Debt;

(e)     falsely claiming the Defendants could cause information to be deleted by the CRAs and thus no longer report to Mr. Koch's credit history, when in reality, the Defendants were not furnishers of data to the CRAs and thus could not report anything to them; and,

(f)     engaging in an orchestrated scheme to get Mr. Koch to pay a debt which he had zero legal obligation to pay.

83.     The Defendants violated **15 U.S.C. § 1692f(1)** in that it attempted to collect an amount not allowed by contract or law, specifically, any amount, as the Debt was discharged in bankruptcy, and, even assuming *arguendo* that the Debt had not been discharged, $1,187.78 of illegally-assessed interest.

84.     The Defendants conduct was willful, intentional, and calculated, and done with a conscious disregard for the rights of a consumer and done for the purpose of tricking Mr. Koch into paying a debt he did not owe.

85.     Williky, as the sole managing member of Lake City Credit, was involved personally in the aforementioned collection efforts of Lake City Credit, and personally responsible for setting the policies by which such conduct was taken and for overseeing such conduct.

86.     Williky and Lake City Credit are thus jointly and severally liable for the aforementioned violations of the FDCPA.

**WHEREFORE**, Mr. Koch respectfully requests this Honorable Court enter judgment against Lake City Credit and Williky, jointly and severally, and in favor of Mr. Koch for:

a.     Statutory damages of $**1,000** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Unspecified actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA

87.     Mr. Koch incorporates paragraphs 1 – 75 as if fully restated herein.

88.     The Defendants violated Section **559.72(9)**, Florida Statutes, when they knowingly attempted to enforce a debt they knew was illegitimate by claiming that the Debt was due, owing and enforceable, when it was not, as it had been discharged in bankruptcy.

89.     The Defendants violated Section **559.72(9)**, Florida Statutes, when they knowingly asserted the existence of a legal right which does not exist, specifically, the rights to:

(a)     collect the Debt which had been discharged in bankruptcy;

(b)     collect $1,187.78 of post charge-off interest, when the Debt had been previously discharged in bankruptcy and such interest had been waived by the Original Creditor;

(c)      collect a consumer debt in Florida without mailing written notice of assignment of debt and waiting 30 days before commencing collection activity; and,

(d)     collect a consumer debt in Florida without first obtaining a Florida Consumer Collection Agency ("**CCA**") license.

90.     Williky, as the sole managing member of Lake City Credit, was involved personally in the aforementioned collection efforts of Lake City Credit, and personally responsible for setting the policies by which such conduct was taken and for overseeing such conduct.

91.     Williky and Lake City Credit are thus jointly and severally liable for the aforementioned violations of the FCCPA.

**WHEREFORE,** Mr. Koch respectfully requests this Honorable Court enter judgment against Lake City Credit and Williky, jointly and severally, for:

      a.     Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

      b.     Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

      c.     Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Koch pursuant to Section 559.77(2), Florida Statutes;

      d.     Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

      e.     Such other relief that this Court deems just and proper

## **JURY TRIAL DEMANDED**

Mr. Koch demands a jury trial on all issues so triable.

Respectfully submitted on April 9, 2019 by:

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
FBN: 119168

**SERAPH LEGAL, P.A.**
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
(813) 567-1230
BGeiger@SeraphLegal.com
Counsel for Plaintiff

**EXHIBIT LIST**

| | |
|---|---|
| A | Defendant's Consumer Collection Agency License for Florida |
| B | Schedule F to Mr. Koch's Petition for Chapter 7 Bankruptcy |
| C | Defendants' Collection Letter to Plaintiff, March 25, 2019 |